## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **PLANNED PARENTHOOD OF THE HEARTLAND, and DR. JILL L. MEADOWS,** | ) CASE NO. 4:10CV3122 ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **DAVE HEINEMAN,** Governor of Nebraska, in his official capacity; | ) ) ) ) **MEMORANDUM AND ORDER ON** |
| **JON BRUNING,** Attorney General of Nebraska; in his official capacity; | ) **ATTORNEYS' FEES AND COSTS** ) ) |
| **KERRY WINTERER,** Chief Executive Officer, and **DR. JOANN SCHAEFER,** Director of the Division of Public Health, Nebraska Department of Health and Services, in their official capacities; and | ) ) ) ) ) ) |
| **CRYSTAL HIGGINS,** President, Nebraska Board of Nursing, and **BRENDA BERGMAN-EVANS,** President, Nebraska Board of Advanced Practice Registered Nurses, in their official capacities, | ) ) ) ) ) ) |
| Defendants. | ) |

This matter is before the Court on the Motion for Attorneys' Fees and Expenses (Filing No. 90) filed by Plaintiffs Planned Parenthood of the Heartland ("Planned Parenthood") and Dr. Jill L. Meadows ("Dr. Meadows")(collectively "Plaintiffs"). The motion is supported by indexes of evidence that include attorney affidavits and expense records (Filing Nos. 91 and 105) and briefs (Filing Nos. 92 and 104). Defendants oppose the motion, as to the amount of fees requested, on several grounds set forth in their brief (Filing No. 98) and supported by their index of evidence (Filing No. 99). For the reasons that

follow, this Court concludes that an award of fees is appropriate in this case in the amount requested by Plaintiffs.

## BACKGROUND

Planned Parenthood brought this action on June 28, 2010, under 42 U.S.C. § 1983, challenging Legislative Bill 594, 101st Leg. Reg. Sess. (Neb. 2010) ("LB594"), under 42 U.S.C. § 1983, on several grounds.  (Filing No. 1.)  Planned Parenthood's Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 2) was filed the same day.  (Filing No. 2.)  An Amended Complaint (Filing No. 51) added Dr. Jill L. Meadows as a Plaintiff.  On July 14, 2010, the Court granted Plaintiffs' motion, in part, and enjoined the enforcement of certain sections of LB 594 (Filing No. 53).  On August 18, 2010, the parties entered a Joint Stipulation to Entry of Final Judgment and Permanent Injunction (Filing No. 62).  The parties stipulated to the entry of a judgment and an order granting final declaratory and injunctive relief consistent with the preliminary injunction, but did not reach a compromise on attorneys' fees and costs.  On August 24, 2010, the Court approved the parties' Joint Stipulation and entered judgment in favor of Plaintiffs.

Plaintiffs seek an award of $125,913.82 for attorneys' fees related to work on the merits of the litigation; $3,445.39 for the costs and expenses related to the merits of the litigation; and $6,868.75 for attorneys' fees incurred in the preparation of the present fees application, for a total requested fee award of $136,227.96.  Defendants do not dispute Plaintiffs' right to an award of reasonable attorneys' fee as a prevailing party under 42 U.S.C. § 1988.  However, Defendants argue that Plaintiffs' request is unreasonable and should be reduced substantially.  Defendants argue that Plaintiffs have failed to document how the hours were expended, have failed to use reasonable billing methods, and have charged excessive hourly rates.  Defendants also argue that the time expended by Plaintiffs' counsel was unreasonable given the relatively short duration of the litigation.

Accordingly, Defendants argue that the Court should reduce the Plaintiffs' requested award to an amount of $10,000, representing 40 hours of work for the short litigation and a modest award for costs and fees associated with the fee application.

## DISCUSSION

Under 42 U.S.C. § 1988(b), Courts may award a reasonable attorney fee to a prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "To be a prevailing party, [a plaintiff] must 'succeed on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit.'"[1] *Forest Park II v. Hadley*, 408 F.3d 1052, 1059 (8th Cir. 2005) (*quoting Farrar v. Hobby,* 506 U.S. 103, 109 (1992)). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). "The hours reasonably expended are determined by reviewing the records submitted by counsel, verifying the accuracy of the records, and then deducting excessive, redundant, or otherwise unnecessary work." *U & I Sanitation v. City of Columbus*, 112 F. Supp. 2d 902, 604 (D. Neb. 2000).

Plaintiffs have submitted affidavits and billing records of attorneys and paralegals with hourly billing rates ranging between $185.00 and $275.00 for attorneys and between $85.00 and $100.00 for paralegals. Multiplied by the 687 hours billed for litigating the merits of this case and the 30.25 hours spent preparing this fee application, Plaintiffs request $125,913.82[2] in fees for the work on the merits of the litigation, and $6,868.75 in

---

[1] Defendants do *not* argue that Plaintiffs' award should be reduced because they were not successful on each of their claims; and because the Plaintiffs obtained the relief they sought with respect to all issues of significance in the litigation, the Court will not reduce their award on any such theory.

[2] The total fees requested for the merits of the litigation is $139,904.25 and Plaintiffs reduced that amount by 10% to reflect duplication of effort.

fees for work on the fee application. Given the novelty and complexity of the issues raised by the enactment of LB 594, the accelerated schedule required to challenge the legislation before its effective date, and other reasons discussed in more detail below, the Court concludes that the Plaintiffs' request for attorneys' fees is reasonable.

**I. Fees in Merits Litigation**

Defendants suggest several grounds that the Court should consider to reduce the amount of fees requested by Plaintiffs. The Court has considered each of these arguments and concludes that each is unpersuasive.

a. Duplicative Services

Defendants claim that a substantial amount of time was billed by multiple attorneys performing the same tasks. Courts may reduce attorney hours and fees for duplication or inefficiency where more than one attorney is used. *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). "Time spent by two attorneys on the same general task is not, however, *per se* duplicative" and "[c]areful preparation often requires collaboration and rehearsal." *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998). For example, in *ACLU Nebraska Found. v. City of Plattsmouth, Neb.*, 199 F. Supp. 2d 964, 969 (D. Neb. 2002), the defendants urged this Court to reduce an attorneys' fee award where two of the plaintiff's lawyers were present for meetings, depositions, and the pretrial conference. The Court determined that these efforts were not duplicative under the circumstances. The Court also noted that "[w]hen the losing party itself uses multiple counsel, the claim that the prevailing party should not have used multiple counsel fails." *Id.* (citing *Carhart v. Stenberg*, 11 F. Supp. 2d 1134, 1137-38 (D. Neb. 1998)).

Under the circumstances of this case, the efforts of the Plaintiffs' attorneys were not unreasonably duplicative. The majority of the allegedly duplicative entries comes from times when both Jennifer Sandman and Mimi Liu, counsel for Planned Parenthood, were

working.  Many of these allegedly duplicative efforts were meetings and telephone conferences to discuss development of case strategy and trial preparation.  Given the nature of the case, the novelty of LB 594, and the important and far-reaching constitutional issues presented, it is not unreasonable to expect that two or more attorneys would confer to organize and prepare the case.  The attorneys conferred with each other to coordinate the efforts necessary to file the Complaint and the Motion for Preliminary Injunction before the statute was to go into effect.  As noted in the Court's Order (Filing No. 53), LB 594 was a first-of-its-kind informed-consent statute.  No other remotely similar statute applicable to abortions, or to any other medical procedures, existed at the time.  LB 594 was drafted in such a manner that it presented highly complex jurisdictional issues of standing, *i.e.*, injury, causation, and redressability, as well as ripeness.  The complexity and novelty of the statute, coupled with the relatively brief period between the passage of LB 594 and its effective date, and the risk of irreparable harm had the statute gone into effect, all suggest that a degree of conferring and coordinating of efforts among Plaintiffs' counsel was reasonable.

The Defendants have submitted a table of allegedly duplicative entries, suggesting that time billed by Roger K. Evans was unreasonable.  According to the time sheets, a significant portion of Mr. Evans's time was spent conferring with co-counsel and reviewing their work.  Again, under the circumstances of this case, Mr. Evans's role was not unreasonably duplicative or unnecessary.  As noted in *Planned Parenthood Minn., North Dakota v. Rounds*, No. CIV. 02-4009, 2006 WL 1889163, at *3 (D.S.D. July 7, 2008), Mr. Evans is one of the "preeminent reproductive rights attorneys in the United States."  In this case, it was not unreasonable for co-counsel to tap his "wealth of legal and strategic knowledge."  *Id.* at *5.

The Court also is unpersuaded that billing for multiple attorneys' attendance at the July 13, 2010, hearing was unreasonable. As stated in *ACLU Nebraska Found.*, that argument is less persuasive when the losing party itself uses multiple counsel. 199 F. Supp. 2d at 969. Defendants also were represented by multiple counsel at the hearing, which was prudent and wholly consistent with the importance and complexity of the issues presented.

The Court notes that it did find some entries on the billing records submitted by Plaintiffs that may be characterized as duplicative. However, these entries were fairly taken into account by the Plaintiffs' voluntary ten percent reduction in hours claimed. The remaining entries were not unreasonably duplicative, and the amount requested by Plaintiffs will not be further reduced for alleged duplication of efforts.

b. Billing in Quarter-Hour Increments

Defendants argue the Plaintiffs' award should be reduced because many of the attorneys and paralegals billed their time in quarter-hour increments rather than tenth-hour increments. The Eighth Circuit has stated that "quarter-hour increment billing is less reliable than tenth-hour billing and risks bill inflation." *Republican Party of Minn. v. White*, 456 F.3d 912, 920 (8th Cir. 2006). In *Republican Party*, the Eighth Circuit focused on billing entries for simple tasks such as phone calls, each billed separately in single quarter-hour increments. Rather than reducing an attorney fee award simply because the attorney billed in quarter-hour increments, the Eighth Circuit conducted its own review to determine if any the quarter-hour billings were unreasonable. *Id.* That Court's review revealed over 500 entries for "conferences" billed for an entire quarter-hour. *Id.* Because those entries lacked more specific description, the Eighth Circuit determined that they were likely to result in over-billing. *Id.* That Court converted each entry into tenth-hour increments and reduced the total award accordingly. *Id.*

The Plaintiffs' accounting in this case does not contain excessive quarter-hour billing entries like those in *Republican Party*. The evidence reveals only a handful of entries billing a single quarter-hour increment. Further, unlike the vague entries in *Republican Party*, each quarter-hour entry contains a specific description of how the time was spent. For example, where Ms. Liu or Ms. Sandman billed a quarter-hour for a telephone conference, the entry specifically identifies the purpose of the conference. Other quarter-hour entries contain similarly detailed descriptions of how the time was spent. The Court is satisfied that Plaintiffs' quarter-hour entries are not inherently unreliable merely because they are not stated in tenth-hour increments.

c.  Sufficient Detail of Time Entries

Defendants argue that the attorney fee award should be reduced because Plaintiffs' billing entries fail to provide sufficient detail in accounting for the attorneys' time. The fee applicant bears the burden of establishing entitlement to an award and documenting the hourly rates and time spent. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (quoting *Hensley*, 461 U.S. at 437). "Inadequate documentation may warrant a reduced fee" because imprecise or incomplete billing records prevent any meaningful review of a fee application. *Id.* In *Flygt*, the Eighth Circuit affirmed the district court's reduction of the lodestar where the billing records included entries such as "legal research," "trial prep," or "met w/ client." *Id.* The Eighth Circuit noted that some entries were so vague that the district court could not determine whether they were related to the applicant's successful claims or whether they even pertained to the applicable litigation. *Id.* The Eighth Circuit suggested that, in the future, a district court may consider directing the fee applicant to submit additional records before reducing the amount, but ultimately concluded that the district court's reduction of the fee was not an abuse of discretion. *Id.*

Here, Defendants claim that 395.45 hours, or nearly half of Plaintiffs' entries, are vague. Unlike the entries in *Flygt*, however, the Plaintiffs' entries are susceptible of meaningful review by the Court. Each of the entries relates solely to this case, and Plaintiffs prevailed in full, obtaining all the relief sought. *Cf. Sanders v. Hartford Life & Accident, Ins. Co.*, No. 04-5163, 2006 WL 1171862, at *1 (W.D. Ark. 2006) ("While plaintiff's attorney's itemization leaves much to be desired in terms of specificity, the Court does not find it so inadequate as to make meaningful review impossible."). Therefore, the Court will not reduce the requested reward based on any perceived lack of specificity.

### d. Typical Nebraska Rates

Defendants claim the Plaintiffs' attorneys billed their time at rates in excess of the typical rate charged in Nebraska for similar cases. The marketplace serves as the district court's guide in determining what is a "reasonable" hourly rate. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Defendants claim that the prevailing rate for attorneys with 9-10 years of litigation experience is likely $200/hour. Defendants' argument is based on the Affidavit of Timothy R. Engler (Filing No. 99-1). However, Mr. Engler's affidavit only establishes the typical billing rates in his own firm, not the typical rates for all attorneys in Nebraska. (Filing No. 99-1 ¶ 9.) The Affidavit of Gail Perry (Filing No. 91-5 ¶ 6) establishes that reasonable rates for this type of case range, at a minimum, between $200.00 to $275.00 per hour. This Court has awarded attorneys' fees at such rates in similar cases, such as Title VII actions. *See e.g. Sheriff v. Midwest Health Partners*, No. 8:07CV475, 2009 WL 2992513, at *10 (D. Neb. Sept. 16, 2009) (awarding rates of $200 to $300 per hour). The complexity and novelty of this case, combined with the skill of the lawyers involved, suggests that the rates billed by Plaintiffs' lawyers are reasonable. No other evidence suggests that the marketplace in Nebraska would support fees substantially

8

less than those charged by counsel for Plaintiffs in this case. Therefore, the lodestar will not be reduced on those grounds.

### e. Total Hours Billed

Defendants argue that the Plaintiffs' total hours billed is excessive based on the short duration of the litigation. The Defendants contrast the total number of hours billed by the Plaintiffs' lawyers in this case to the number of hours billed in *Planned Parenthood of S.C. v. Rose*, 361 F.3d 786 (4th Cir. 2004). In *Rose*, counsel for plaintiff billed a total of 440.15 hours for a case that was litigated over a four-year period, ending with a denied petition for certiorari to the United States Supreme Court. In this case, the Plaintiffs' lawyers billed a total of 687.05 hours. Defendants argue that the reasonableness of the hours requested by Plaintiffs is undermined by the contrast between the hours spent by counsel in the *Rose* litigation.

The legal bases for the challenges in *Rose* were substantially different from the issues presented in this case. According to the affidavit of Mr. Evans, also co-counsel to the plaintiff in *Rose*, there was no work to be done with expert witnesses or need to develop any extensive factual testimony, and the South Carolina law challenged in *Rose* was not the first of its kind. Similar laws had been enacted in Florida and Louisiana, and both of those laws had been challenged in court. Counsel in *Rose* had access to the pleadings, briefs, and other documents filed in those cases as well as the courts' rulings. In contrast, no law like LB 594 had ever been passed, much less challenged. The novelty and complexity of the issues required extensive work, all of which needed to be completed before the statute was to go into effect. The Court is not persuaded that the number of

hours expended by Plaintiffs' counsel was unreasonable simply based on the case's relatively short duration.³ For the reasons already stated, even though the litigation period was brief, the hours expended in this case were reasonable under the circumstances.

## II. Costs in Merits Litigation

Defendants have few objections to Plaintiffs' costs. The Defendants do question a $1,500 plane ticket for Ms. Sandman to Omaha and her taxi fares, approaching $200.00. The Court's own review of the record of costs claimed by Plaintiffs does not indicate any unreasonable expenditures.

## III. Fees Incurred Preparing Fee Application

Finally, Defendants claim that Plaintiffs' request for fees for the preparation of this fee application is unreasonable, for the same reasons that the Defendants challenge the fees claimed by Plaintiffs' counsel for the merits of the litigation, namely, the quarter-hour billing increments, the hourly rates allegedly charged by Nebraska attorneys, and the purported vagueness of the entries. For the reasons stated above, the Court is unpersuaded by the Defendants' arguments.

## IV. Lodestar Calculation

Plaintiffs succeeded on each of their claims, challenging a novel statute that presented complex and important constitutional issues, and that required very expedited action. The Court's independent review of the Plaintiffs' evidence in support of their claims

---

³ In the weeks before LB 594 was to take effect, the undersigned judge and at least two members of her staff worked evenings and weekends to ensure that the Memorandum and Order addressing the Plaintiffs' request for preliminary injunctive relief could be expedited. This Court would find no reason to doubt the veracity of lawyers on either side of this litigation claiming to have worked similarly long hours.

for attorneys' fees leads the Court to conclude that the claims are fair and reasonable and should not be reduced, other than by 10% for duplication of effort.  The Court's calculation is as follows for the merits litigation:

| Attorney/Paralegal | Hours x Rate/Hr. | Total Fee Requested |
|---|---|---|
| **Planned Parenthood Federation of America** | | |
| Mimi Liu | 263.00 x $225.00 | $ 59,175.00 |
| Liu (travel) | 14.00 x $112.50 | $ 1,575.00 |
| Jennifer Sandman | 231.00 x $225.00 | $ 51,975.00 |
| Sandman (travel) | 12.00 x $112.50 | $ 1,350.00 |
| Roger Evans | 22.25 x $275.00 | $ 6,118.75 |
| Jennifer Chou (paralegal) | 58.50 x $ 85.00 | $ 4,972.50 |
| Emily Rock (paralegal) | 22.00 x $ 85.00 | $ 1,870.00 |
| Subtotal | | $ 127,036.25 |
| 10% Reduction for Duplication of Effort | | $ 114,332.62 |
| **Baylor, Evnen, Curtiss, Grimit & Witt, LLP** | | |
| Andrea Snowden | 16.90 x $225.00 | $ 3,802.50 |
| Gail Perry | 3.30 x $225.00 | $ 742.50 |
| Perry (travel) | 2.00 x $112.50 | $ 225.00 |
| Susan Blackwell (paralegal) | 6.30 x $100.00 | $ 630.00 |
| Subtotal | | $ 5,400.00 |
| 10% Reduction for Duplication of Effort | | $ 4,860.00 |
| **American Civil Liberties Union Federation - New York** | | |
| Alexa Kolbi-Molinas | 22.80 x $185.00 | $ 4,218.00 |
| Talcott Camp | 13.00 x $250.00 | $ 3,250.00 |
| Subtotal | | $ 7,468.00 |
| 10% Reduction for Duplication of Effort | | $ 6,721.20 |
| **Total Fees Award for Merits Litigation** | | **$ 125,913.82** |

Costs will be awarded according to the amounts requested in the Plaintiffs' motions. Accordingly, taxable costs will be awarded in the amount of $3,445.39.  The lodestar calculations for fees incurred in preparing this fee application are as follows:

| Attorney/Paralegal | Hours x Rate/Hr. | Total Fee Requested |
|---|---|---|
| Mimi Liu | 29.00 x $ 225.00 | $ 6,525.00 |
| Roger Evans | 1.25 x $ 275.00 | $ 343.75 |

**Total Fees Award for Fee Application**     **$ 6,868.75**

Accordingly,

IT IS ORDERED: The Plaintiffs' Motion for Attorneys' Fees and Expenses (Filing No. 90) is granted as follows:

1. Plaintiffs are awarded attorneys' fees as the prevailing party in the litigation of the merits of this case in the total amount of $125,913.82, divided between counsel for the Plaintiffs as follows:

   a. $114,332.62 to Planned Parenthood Federation of America;

   b. $4,860.00 to the law firm of Baylor, Evnen, Curtiss, Grimit & Witt, LLP; and

   c. $6,721.20 to the American Civil Liberties Union Foundation - New York;

2. Plaintiffs are awarded non-taxable expenses in the total amount of $3,036.39 to Planned Parenthood Federation of America, and $409.00 to the law firm of Baylor, Evnen, Curtiss, Grimit & Witt, LLP; and

3. Plaintiffs are awarded attorneys' fees in the amount of $6,868.75 to Planned Parenthood Federation of America representing the fees incurred in preparing its fee application.

DATED this 28th day of February, 2011.

            BY THE COURT:

            s/Laurie Smith Camp
            United States District Judge